IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**UNITED STATES OF AMERICA**                                                                          **PLAINTIFF**

**V.**                            **CASE NO. 5:16-CR-50032-1**

**SANTIAGO SALINAS**                                                                  **DEFENDANT**

## OPINION AND ORDER

On June 22, 2016, Defendant Santiago Salinas was charged by Indictment with conspiring to distribute methamphetamine, and with three separate counts of distributing a mixture or substance containing more than fifty grams of methamphetamine. *See* Doc. 10. He entered a guilty plea on August 15 of that same year to Count 4 of the Indictment, which was one of the actual distribution counts. *See* Doc. 39–40, 42. This Court sentenced him on January 12, 2017, to 151 months of imprisonment with 3 years of supervised release to follow, along with a $100.00 special assessment and a $2,900.00 fine. *See* Doc. 78.

On February 14, 2019, Mr. Salinas filed a Motion Requesting Judicial Clarification (Doc. 85), in which he raises issues regarding the statutory maximum sentence described in his Plea Agreement, as well as the calculation of his criminal history score in his Presentence Investigation Report ("PSR"). With respect to the former set of issues, Mr. Salinas argues that his 151-month sentence is inconsistent with "a 60 month cap" that he contends was set forth in his Plea Agreement, and he asks that this Court "provide[] an avenue for relief" that would bring his sentence into alignment with that purported cap. *See id.* at 1. But Mr. Salinas is simply incorrect about what his Plea Agreement stated.

1

In the "Maximum Penalties" section of his Plea Agreement, Mr. Salinas acknowledged that the count to which he was pleading guilty carried "a mandatory *minimum* term of imprisonment for 5 years" and "a maximum term of imprisonment for 40 years." *See* Doc. 39, ¶ 12 (emphasis added). In other words, he acknowledged that 60 months was the *least*—not the most—amount of time to which this Court could sentence him to prison. This acknowledgement was a correct statement of the law. *See* 21 U.S.C. § 841(b)(1)(B)(viii). And his sentence of 151 months was far below the 480-month statutory cap that he acknowledged in his Plea Agreement. *See id.*

The other issue raised in Mr. Salinas's Motion concerns the PSR's calculation of his criminal history score. Mr. Salinas states that he "received an enhancement in his criminal history of six (6) points," and asks this Court to explain how his criminal history score was computed as well as "how past behavior was used in criminal history computation." *See* Doc. 85, p. 1.

The Court has reviewed Mr. Salinas's PSR, and has discovered a typo that it believes might have contributed to Mr. Salinas's confusion on this matter. The PSR assigned 3 criminal history points each for two prior convictions of distributing a controlled substance, for a subtotal of 6 criminal history points. *See* Doc. 72, ¶¶ 96–98. Then 2 more points were added because Mr. Salinas was still under a 15-year suspended sentence at the time he committed the instant offense, yielding a subtotal of 8 criminal history points. *See id.* at ¶ 99. The PSR then states that "a criminal history score of **eight (8)** establishes a criminal history category of **VI**." *See id.* at ¶ 100 (emphasis in original). But in fact a criminal history score of 8 should establish a criminal history category of IV—

not VI. See U.S.S.G. Ch. 5, Pt. A. This is the typo, then: it appears the "I" and the "V" were inadvertently reversed in paragraph 100 of the PSR.

Ordinarily this might be a significant error, because the criminal history category is one of the two inputs used to calculate a defendant's advisory guidelines range for imprisonment. (The other such input is the defendant's offense level.) In other words, if a criminal history category of VI were applied when category IV should have been applied instead, then this would yield an advisory guidelines range that is more severe than what is actually called for under the sentencing guidelines. It is well established that "[a] failure to properly calculate the advisory Guidelines range is a significant procedural error," and if it is determined on appeal that such an error occurred and was not harmless, then the case must be remanded for resentencing.[1] See *United States v. Spikes*, 543 F.3d 1021, 1023 (8th Cir. 2008).

However, in this case, the aforementioned typo did not result in an incorrect calculation of Mr. Salinas's advisory guidelines range. This is because in the very next paragraph following the typo, as well as in paragraph 87, the PSR notes that Mr. Salinas is a "career offender" under U.S.S.G. § 4B1.1. See Doc. 72, ¶¶ 87, 101. He acquired this status because two of his prior offenses, along with his instant offense, were convictions for "a controlled substance offense." See U.S.S.G. § 4B1.1(a). And as the PSR correctly observes, "[a] career offender's criminal history category in every case is **VI**," regardless of what their underlying criminal history score is. See Doc. 72, ¶ 101 (emphasis in original); U.S.S.G. § 4B1.1(b). Thus, although paragraph 100 of the PSR incorrectly identified Mr. Salinas's preliminary criminal history category as VI instead of

---

[1] Mr. Salinas did not pursue an appeal in this matter. See Doc. 84.

as IV, his final criminal history category was correctly identified as VI, and his advisory guidelines range was correctly calculated on that basis.[2]

**IT IS THEREFORE ORDERED** that Defendant Santiago Salinas's Motion Requesting Judicial Clarification is **GRANTED IN PART AND DENIED IN PART**. Specifically, the Motion is denied in all respects except that, pursuant to Fed. R. Crim. P. 36, the Probation Officer is **DIRECTED** to issue a corrected Presentence Investigation Report for Mr. Salinas, in which paragraph 100 is revised to read as follows: "The total criminal history score is **eight (8)**. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of **eight (8)** establishes a criminal history category of **IV**."

**IT IS SO ORDERED** on this 14th day of March, 2019.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[2] Even if Mr. Salinas's advisory guidelines range had been incorrectly calculated, Fed. R. Crim. P. 35 only authorizes a district court to "correct a sentence that resulted from arithmetical, technical, or other clear error" if the correction is done "[w]ithin 14 days after sentencing." Mr. Salinas filed the instant Motion more than 2 years after his sentence was imposed.